IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALTEC INDUSTRIES, INC., | No. C -13-03505(EDL) |
| Plaintiff, | **ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR LEAVE TO AMEND ITS COUNTERCLAIMS** |
| v. | |
| EDWARD WALKER, et al., | |
| Defendant. | |

This breach of contract and trade secrets case involves a dispute between Plaintiff Altec Industries and Defendant Edward Walker, an engineer and inventor, along with his co-defendant business partner and business entity, over the ownership of certain inventions that Walker designed. Plaintiff, whose business involves providing vehicles to PG&E, was interested in the inventions, which provide auxiliary power to a vehicle without running the engine. Plaintiff offered Defendant Walker part-time employment and Walker signed a Confidentiality Agreement. According to Plaintiff, this agreement gives it the rights to the two inventions. Defendants disagree. Now before the Court is Defendants' Motion for Leave to Amend their Counterclaim against Plaintiff. Although the Court is skeptical of Defendants' ultimate likelihood of prevailing on these counterclaims, it grants the motion for leave to amend to assert the proposed counterclaims, except for those sounding in fraud, as long as Defendants make the further amendments discussed herein.

**I.     Background**

In late 2010, Defendant Walker presented the concepts for his inventions in two PowerPoint presentations to Plaintiff. First Amended Counterclaim ("FACC") ¶ 23-24.  He delivered a

prototype in January of 2011. Id. ¶ 27. In May of 2011, David Payne, Plaintiff's Operations Manager, offered Walker a part-time temporary position with Plaintiff to develop new products and product extensions with a Green Fleet Engineering Project Team. Id. ¶ 34. The offer was conditioned on a Confidentiality Agreement, which Walker signed. Id. ¶ 35. In December 2012, Mr. Payne told Walker that he had arranged for a permanent part-time position, which Walker applied for and obtained. Id. ¶ 40. In January of 2013, Walker met with Mr. Payne to show him a demonstration of the Prodigy System, one of Walker's inventions. Mr. Payne asked if this was the same system and set of recommendations that Walker had presented in December of 2010, which Walker affirmed, and Payne said it could only be successful outside of Plaintiff and recommended that Walker resign, which he did, assuming he was leaving on good terms. Id. ¶ 42. After he resigned, Walker and Defendant Mariani, on behalf of Defendant IRT, made a presentation to Plaintiff and offered to partner with Plaintiff as a master distributor. Plaintiff's employees did not immediately respond, and Defendants contacted PG&E and offered to show its representatives the prototype. At the meeting, Defendants offered to build PG&E a new truck or retrofit an old one to let PG&E test the system. PG&E preferred to test the system on two trucks that they had on an upcoming order from Plaintiff, and asked Defendants to go back and work out the details with Plaintiff. Id. ¶ 43. Defendants allege that "as things continued to develop with the project, Altec asserted that Hyperdrive and Prodigy belonged to Altec and not Walker or IRT. Counterclaimants strongly disagree with this assertion and maintain that they, instead, own the subject systems." Id. ¶ 44.

On November 11, 2013, Defendants filed counterclaims alleging, generally, that Plaintiff filed suit against Defendants in order to intimidate Defendants and interfere with Defendants' use, marketing, and sale of the inventions at issue. Docket No. 18. (Defendants had previously filed what were improperly termed cross-claims, Docket No. 12. When Plaintiff filed a First Amended Complaint, Defendants took the opportunity to rename their cross-claims properly as counterclaims.) On December 2, 2013, Plaintiff filed a Special Motion to Strike the Counterclaims under California Code of Civil Procedure section 425.16 (the California anti-SLAPP statute), as well as a Motion to Dismiss the Counterclaims under Federal Rule of Civil Procedure 12(b)(6). Docket Nos. 23, 24.

2

Defendants filed a notice of voluntary dismissal, without prejudice, of their counterclaims on December 13, 2013. Docket No. 27. Defendants did not oppose either of Plaintiff's motions. Plaintiff withdrew its Motion to Dismiss on December 23, 2013, and on the same day filed a Motion for Attorney Fees pursuant to the anti-SLAPP law. Docket Nos. 28, 30.

According to Plaintiff, it is the prevailing party on the anti-SLAPP motion and is therefore entitled to attorneys' fees and costs for that motion (the statute provides for mandatory fees for the prevailing party). Defendants, presumably believing that the withdrawal of their counterclaims meant that both Plaintiff's motions were moot, did not oppose the anti-SLAPP motion, but filed an opposition to Plaintiff's motion for attorneys' fees, arguing that federal courts in the Ninth Circuit do not award attorneys' fees for the first special motion to strike and that such an award would violate Federal Rule of Civil Procedure 15, allowing the liberal amendment of pleadings. The Court heard those motions on January 28, 2014, and advised the parties that, following other courts in this District, it would defer ruling on the motions to strike and for attorneys' fees until the case had progressed further.

On January 13, 2014, Defendants filed a motion for leave to file amended counterclaims. A redline of the current counterclaims and the proposed amendments appears as Exhibit B to the declaration supporting the motion. Motion for Leave to Amend Ex. B. There are six counterclaims in the proposed amendment: 1) violations of Cal. Business & Professions code § 17200; 2) intentional interference with prospective economic advantage; 3) fraudulent inducement; 4) misappropriation of trade secrets; 5) common law unfair competition; and 6) declaratory relief. The declaratory relief counterclaim is the only additional counterclaim.

**II.    Legal Standard**

Defendants seek leave to file their proposed counterclaims pursuant to Federal Rule of Civil Procedure 15(a)(2), which calls for courts to freely grant leave to amend when justice requires. Fed. R. Civ. P. 15(a)(2). Four factors are commonly used to determine the propriety of a motion for leave to amend: bad faith, undue delay, prejudice to the opposing party, and futility of amendment.

3

Foman v. Davis, 371 U.S. 178, 182 (1962); Ditto v. McCurdy, 510 F.3d 1070, 1079 (9th Cir. 2007). The Court notes, however, that these four factors are not necessarily equal, and that "it is the consideration of prejudice to the opposing party that carries the greatest weight." Eminence Capital, LLC v. Aspeon, Inc., 316 F.3d 1048, 1052 (9th Cir. 2003). As Judge Illston noted in Advanced Micro Devices, Inc. v. Samsung Elecs. Co., because prejudice carries the greatest weight, "[f]utility alone might not be sufficient to bar [the defendant] from amending its pleadings." No. 08-986, 2009 WL 1396256 at *2 (N.D. Cal. May 18, 2009) (Illston, J.).

Here, Plaintiff opposes amendment based on futility. Leave to amend is properly denied where the proposed amendment would be futile. See Carrico v. City & Cnty of San Francisco, 656 F.3d 1002, 1008 (9th Cir. 2011) (futile to allow leave to amend where the plaintiff could not establish standing). A court may evaluate the futility of a proposed amended pleading under the same standard as it evaluates pleadings under Federal Rule of Civil Procedure 12(b)(6). See Stonebrae, L.P. v. Toll Bros., Inc., No. 08-221, 2010 WL 114010, at *1 (N.D. Cal. Jan. 7, 2010). Pursuant to Rule 12(b)(6), a Court must construe all allegations in the light most favorable to the nonmoving party, but need not accept as true conclusory allegations, legal characterizations, or unreasonable inferences alleged in the pleadings. See Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001). Plaintiff cites Netbula v. Distinct Corp., 212 F.R.D. 534, 539 (N.D. Cal. 2003) for the proposition that unless there is no set of facts which can be proved under the amendment which would constitute a valid claim or defense, leave to amend should be granted. 212 F.R.D. at 538-39. However, as the Stonebrae court noted, that proposition pre-dates the Supreme Court's decisions in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007) and Iqbal v. Ashcroft, 556 U.S. 662 (2009), which effectively repudiated the "no set of facts" language from Conley v. Gibson, 355 U.S. 41, 46 (1957). See 2010 WL 114010, at *1; Advanced Micro Devices, Inc. v. Samsung Elecs. Co., No. 08-986, 2009 WL 1396256 at *2 n.2 (N.D. Cal. May 18, 2009).

**III.   Discussion**

The six counterclaims arise out of an alleged scheme by Plaintiff to fraudulently induce

4

Defendant Walker to accept employment with Plaintiff and sign a Confidentiality Agreement assigning Plaintiff rights to the inventions he developed before he began his employment. The new proposed counterclaims remove references to the lawsuit that appeared in the earlier counterclaims and add a request for a declaration that Defendants are the owners of the two inventions. The counterclaims focus on Plaintiff's alleged failure to provide a disclosure required by Labor Code section 2870 in the Confidentiality Agreement that Defendant Walker signed. Ex. B. ¶ 57.

California Labor Code section 2870 states:

> (a) Any provision in an employment agreement which provides that an employee shall assign, or offer to assign, any of his or her rights in an invention to his or her employer shall not apply to an invention that the employee developed entirely on his or her own time without using the employer's equipment, supplies, facilities, or trade secret information except for those inventions that either:
>
> (1) Relate at the time of conception or reduction to practice of the invention to the employer's business, or actual or demonstrably anticipated research or development of the employer; or
>
> (2) Result from any work performed by the employee for the employer.

Cal. Labor Code § 2870.

California Labor Code section 2872 states:

> If an employment agreement entered into after January 1, 1980, contains a provision requiring the employee to assign or offer to assign any of his or her rights in any invention to his or her employer, the employer must also, at the time the agreement is made, provide a written notification to the employee that the agreement does not apply to an invention which qualifies fully under the provisions of Section 2870. In any suit or action arising thereunder, the burden of proof shall be on the employee claiming the benefits of its provisions.

Cal. Labor Code § 2872.

The Confidentiality Agreement is Exhibit A to Plaintiff's Complaint, and also appears in its opposition brief:

> I hereby agree for myself, my heirs and representatives, to assign, transfer, and set-over, and I do hereby assign, transfer and set-over to Altec, its successors and assigns. All of my rights, title and interest in and to any and all creations which are or may become legally protectable or recognized as forms of property, including all designs, ideas, inventions, improvements . . . which I, either solely or jointly with others, have conceived, made or suggested, or may hereafter conceive, make or suggest, during my employment with Altec or its successors and the next six (60 month period following the termination of such employment, which in any way relate, directly or indirectly, to Altec's business, procedural, technical, or commercial needs, problems, developments or projects or to its production, research or experimental developments and projects of every name and nature under consideration and/or being carried on by or for Altec prior to the termination of my employment.

5

Opp. at 10 n.5 (emphasis added). The Confidentiality Agreement requires Defendant Walker to assign to Plaintiff those inventions that he conceived or made during his employment and that related to Plaintiff's business. Plaintiff argues that this provision complies fully with California Labor Code section 2780, because the inventions at issue relate to Plaintiff's business or anticipated research and development. However, it is undisputed that Plaintiff did not make the section 2872 disclosure, which is mandatory.

Plaintiff argues generally that while the proposed amended counterclaims remove specific references to its lawsuit and other protected activity, they retain veiled references to protected activity and do not contain sufficient allegations to state cognizable claims. Plaintiff also argues that Defendants have not put forward any alternative basis for the theories that underpin their earlier argument (that the lawsuit and cease and desist letter were a scheme to prevent Defendants from proceeding with work developing the inventions at issue). The Court will discuss the individual counterclaims in turn.

### A. First Amended Counterclaim: Cal. Business & Professions Code § 17200 (¶¶ 45-49).

California's Unfair Competition Law ("UCL"), codified at Business and Professions Code section 17200, proscribes unlawful, unfair, and fraudulent business practices. Cal. Bus. & Prof. Code § 17200. This counterclaim contends that Plaintiff failed to make proper disclosures under the Labor Code when it requested that Defendant Walker execute the Confidentiality Agreement. The amended first counterclaim eliminates two paragraphs referencing the cease and desist letter and the lawsuit. The only other change is the addition of the failure to disclose to Defendant Walker that the intent of Plaintiff's offer of employment, in addition to the execution of the Confidentiality Agreement, was to make the two inventions its own. The rest of the counterclaim is unchanged and alleges that the "unlawful, unfair, and deceptive business practices" comprised Plaintiff's failure to make the proper disclosures under the Labor Code, Plaintiff's encouragement of Defendant Walker to resign his part-time employment and pursue becoming a supplier to Plaintiff, and Plaintiff's

6

failure to disclose to Defendant Walker that Plaintiff's employment of him was designed to obtain his trade secrets and inventions. Defendants allege that they have suffered injury as a result of such conduct and that Plaintiff was unjustly enriched.

Plaintiff argues that Defendants have failed to allege sufficient facts identifying the concealment of any material fact by Plaintiff in hiring Walker or having him sign the Confidentiality Agreement. It further argues that there was nothing unlawful in the assignment clause of the Agreement, which required Walker to assign to Plaintiff those inventions made during his period of employment that related to its business or anticipated research and development, and that any act that the California Legislature deems to be lawful may not form the basis for a section 17200 action. See Cel-Tech Commc'n Inc. v. L.A. Cellular Tel. Co., 20 Cal. 4th 163, 183 (1999); Blank v. Kirwan, 39 Cal. 3d 311, 329 (1985) (compliance with underlying law is a complete defense to a section 17200 unlawful or unfair claim). However, as discussed below regarding the Third Counterclaim, it is undisputed that Plaintiff failed to include a section 2872 disclosure in the Confidentiality Agreement, in violation of the statute. Although the Court doubts that discovery will show that the omission of this mandatory formality was material, Defendants' counterclaim is not futile on its face.

### B. Second Amended Counterclaim: Intentional Interference with Prospective Economic Advantage (¶¶ 50-55).

A claim for intentional interference with prospective economic advantage requires: 1) an economic relationship between the plaintiff and another, containing a probable future economic benefit or advantage to the plaintiff; 2) defendant's knowledge of the existence of that relationship; 3) defendant's intentional conduct designed to interfere with or disrupt that relationship; 4) an actual disruption; and 5) damage to the plaintiff as a result. Marin Tug & Barge, Inc. v. Westport Petroleum, Inc., 271 F.3d 825, 830-31 n.8 (9th Cir. 2001).

Defendants allege that they have existing and prospective relationships with customers who would consider using their products and that Plaintiff has knowledge of some of these relationships.

Ex. B. ¶ 51. Defendants claim that Plaintiff has sought to interrupt these relationships through its "assertion by Altec of ownership of the subject systems," as opposed to "the maintenance of this lawsuit," as stated in the first counterclaim Ex. B ¶ 52. Defendants allege that Plaintiff's conduct has no lawful competitive purpose but rather was designed specifically to injure Defendants, that the conduct was malicious and fraudulent, and that Defendants have suffered injury as a direct result. Id. ¶ 52-55.

Plaintiff argues that this proposed amendment fails to specify any conduct that constitutes such interference. The phrase "assertion of ownership," Plaintiff contends, is cryptic and vague, and not connected to anything apart from the privileged litigation conduct that was the subject of the previous counterclaim. Further, Plaintiff argues, there is no allegation of any actual economic relationship between Defendants and another party or of Plaintiff's knowledge or interference. The vague allegations of what might have been are insufficient. See Youst v. Longo, 43 Cal. 3d 64, 71 (1987) ("Although varying language has been used to express this threshold requirement, the cases generally agree that it must be reasonably probable that the prospective economic advantage would have been realized but for defendant's interference."); Pardi v. Kaiser Found. Hosp., 389 F.3d 840, 852-53 (9th Cir. 2004) (first element of the claim not satisfied when there was a "speculative expectation that a potentially beneficial relationship [would] arise").

Defendants, in their reply brief, state that they had a potential business relationship with Pacific Gas & Electric ("PG&E"), and that the amended counterclaim described that relationship. Ex. B. ¶¶ 9, 43. However, Defendants do not mention PG&E in the proposed Second Counterclaim for Relief. Defendants argue that they made a presentation to PG&E, which was interested in Defendants' inventions, and PG&E asked Defendants to work out a deal with Plaintiff because PG&E preferred to have the inventions incorporated into trucks that it had already ordered from Plaintiff. This was not possible because of Plaintiff's claim of ownership over the inventions. Reply at 4. The description in the reply of Plaintiff's acts is more fulsome than anything in the proposed amended counterclaim, which describes the meeting with PG&E and then states only "as things continued to develop with the project, Altec asserted that Hyperdrive and Prodigy belonged to Altec and not Walker or IRT." FACC ¶ 43. There is no detail as to how exactly Plaintiff made that

assertion – apart from the admittedly protected litigation conduct, which has been stricken from the counterclaim – or how it interfered with the PG&E order.

Although the proposed counterclaim does not, as it stands, include enough detail to make out a claim for intentional interference with a prospective economic advantage, from Defendants' reply brief it appears there may be more detail to include. Given Rule 15's guidance to grant leave to amend freely and the lack of prejudice or undue delay, the Court will grant leave to amend this counterclaim, with the caution to Defendants that more detail is needed on exactly how Plaintiff "asserted its ownership" in the inventions apart from its protected litigation conduct if Defendants continue to pursue this claim.

### C. Third Amended Counterclaim: Fraud and Rescission (¶¶ 56-64).

This counterclaim is unchanged from the previous pleading. Defendants allege that Plaintiff fraudulently induced Defendant Walker to enter into the Confidentiality Agreement by concealing material information, including the California Labor Code requirement discussed above, and the fact that the Confidentiality Agreement would be used to acquire Defendant Walker's inventions. Ex. B. ¶ 57. Defendants allege that had Walker known these material facts he would not have signed the agreement, that Plaintiff had a duty to disclose these facts, that his reliance was reasonable, that he suffered injury because of Defendant's fraud, and that Plaintiff's conduct was malicious, oppressive, and fraudulent.

A claim for fraudulent inducement requires: a) misrepresentation; b) knowledge of its falsity; c) intent to induce reliance; d) justifiable reliance; and e) damage. Lazar v. Super Ct., 12 Cal. 4th 631, 638 (1996). Plaintiff argues that Defendants cannot base their fraud claim on a purported failure to comply with California Labor Code section 2872, which, as noted above, provides that where an employment agreement includes a requirement that the employee assign his rights in an invention to the employer, the employer must provide a written notification that the agreement does not apply to inventions whose assignment is barred by Labor Code section 2870.

The Confidentiality Agreement requires Defendant Walker to assign to Plaintiff those

9

inventions that he conceived or made during his employment and that related to Plaintiff's business. Opp. at 10 n.5. Plaintiff argues that this provision complies fully with California Labor Code section 2780, because the inventions at issue relate to Plaintiff's business or anticipated research and development. Opp. at 10-11.

The assignment provision does appear to comply with section 2780, since it is undisputed that the inventions at issue relate to Plaintiff's business and R&D. Although Plaintiff did not provide the required section 2872 notice, that failure does not give rise to fraudulent concealment or fraudulent inducement. This fraud claim must meet the heightened pleading requirement of Federal Rule of Civil Procedure 9(b), which requires greater particularity as to the details and intent of the alleged wrongdoer. Defendants allege that Plaintiff had a duty to disclose the missing section 2872 language and the fact that Defendants planned to acquire Walker's intellectual property, and that Plaintiff knowingly and actively withheld the information from him with the intent to fraudulently induce him into signing the Confidentiality Agreement. There is no support for Defendants' allegation that the inclusion or omission of the statutory language was intentional at all, since the actual assignment clause seems benign and within the bounds of section 2870. There is no allegation that Defendant Walker was misled about the effect of the assignment clause or any of the other content of the Confidentiality Agreement. Further, it is unclear how any damages arise from the alleged fraud. The Court denies Defendants' motion for leave to amend this counterclaim. It does not meet Federal Rule of Civil Procedure 9(b)'s heightened pleading requirement, and there is no connection alleged between Plaintiff's omission of required statutory language and its alleged intent to defraud Defendants.

**D.      Fourth Amended Counterclaim: Misappropriation of Trade Secrets, Cal. Civil Code § 3426 (¶¶ 65-69).**

A claim for trade secret misappropriation requires that: 1) plaintiff own a trade secret; 2) defendant acquired, disclosed, or used the plaintiff's trade secret through improper means; and 3) plaintiff was damaged by defendant's actions. Cytodyn, Inc. v. Amerimmune Pharm., Inc.,

160 Cal. App. 4th 288, 296-97 (2008). Plaintiff argues that Defendants have failed to allege any actual misappropriation of any alleged trade secrets that belong to Defendants. Defendants allege that Defendant Walker made two presentations of the inventions to Plaintiff prior to executing the Confidentiality Agreement and state that they believe Plaintiff is now building a similar system using Defendants' information. Reply at 5.

As with the second proposed amended counterclaim, detail included in Defendants' reply brief shows that the counterclaim may not be futile on its face if it is further amended, and the Court will grant Defendants' motion for leave to amend. However, the Court once again cautions Defendants to add significant detail unrelated to Plaintiff's protected litigation conduct to support their counterclaim if they continue to pursue it.

### E.     Fifth Amended Counterclaim: Common Law Unfair Competition (¶¶ 70-73).

Common law unfair competition is usually invoked to protect something of value not covered by other areas of law, such as patent or copyright law or trade secret law. In California, there are four elements: 1) the plaintiff invested substantial time, skill, or money in developing the property; 2) the defendant appropriated and used the property at little or no cost; 3) the plaintiff did not authorize or consent to the property's appropriation and use; and 4) the plaintiff was injured by the appropriation and use. See City Solutions, Inc. v. Clear Channel Commc'n, Inc., 365 F.3d 835, 842 (9th Cir. 2004).

Plaintiff argues that Defendants have failed to allege facts demonstrating any misappropriation of their work, and notes that they cannot rely on Plaintiff's litigation activity to do so. Defendants argue that Plaintiff wrongfully induced Defendant Walker to accept a job offer and presented him with a legally insufficient confidentiality agreement in order to unlawfully appropriate the property that he worked hard to develop, which has enabled Plaintiff to unfairly compete and develop its own similar system. Reply at 6. As noted above in regard to the second and fourth proposed counterclaims, Defendants have included some details in their Reply brief that show that the counterclaim may not be futile on its face if further amended, and the Court grants leave to

11

amend the fifth counterclaim.

### F. Sixth Amended Counterclaim: Declaratory Relief (¶¶ 74-77).

Defendants have added a sixth counterclaim for a declaration that they own the subject inventions. Ex. B ¶¶ 74-77. Plaintiff states that it does not oppose Defendants' filing an amended counterclaim alleging only the claim for declaratory relief, as long as that claim does not rely on Plaintiff's protected litigation activity. Opp. at 3 n.1. The Court grants the motion for leave to amend as to the sixth counterclaim.

## IV. Conclusion

As the Court stated at the hearing, it is skeptical of the ultimate success of Defendants' counterclaims, but given Rule 15's instruction to grant leave to amend freely and the lack of prejudice to Plaintiff, the Court grants Defendants' motion for leave to amend its first and sixth counterclaims as proposed. The Court grants the motion for leave to amend Defendants' second, fourth, and fifth counterclaims if Defendants add further detail as the Court has noted above. The Court denies Defendants' motion for leave to amend its third counterclaim for fraud.

**IT IS SO ORDERED.**

Dated: March 6, 2014

ELIZABETH D. LAPORTE
United States Chief Magistrate Judge

12